UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------
GORDON D. LAVRICK,

                        Plaintiff,                    **MEMORANDUM & ORDER**
                                                  20-CV-609 (MKB)
              v.

SUFFOLK COUNTY, NEW YORK, and SUFFOLK
COUNTY DISTRICT ATTORNEY,

                        Defendants.
-------------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff Gordon D. Lavrick, proceeding *pro se*, commenced the above-captioned action against Suffolk County, New York, and the Suffolk County District Attorney, on February 3, 2020. (Compl., Docket Entry No. 1; Letter dated Jan. 10, 2020, at 2, annexed to Compl. as Ex. 1, Docket Entry No. 1-1.)[1] The Court liberally construes the Complaint as alleging claims for false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983 and New York state law, *Brady* violations, deprivation of due process, and a *Monell* claim against Suffolk County, New York,[2] arising out of Plaintiff's arrest on September 10, 1967, by Detective Thomas F. Mongan and his subsequent conviction.[3]

---

     [1] Because the Complaint and the exhibits attached to it are not consecutively paginated, the Court refers to the page numbers assigned by the electronic filing system.

     [2] Although Plaintiff does not explicitly assert a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Court construes his claim against Suffolk County, New York, as a *Monell* claim.

     [3] "[W]e liberally construe pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (per curiam) (quoting *Bertin v. United States*, 478 F.3d

Defendants move to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Plaintiff opposes the motion.[4] For the reasons set forth below, the Court grants Defendants' motion and dismisses the Complaint.

## I. Background

The Court assumes the truth of the factual allegations in the Complaint for the purposes of this Memorandum and Order.

### a. Plaintiff's arrest and trial

On September 10, 1967, Suffolk County Police Department ("SCPD") Detective Thomas F. Mongan arrested Plaintiff at his home in Center Moriches, New York, for the sexual abuse of a child ten years old or younger. (Compl. 8; *see also* Suffolk County District Ct. Min. 56–57, annexed to Compl. as Ex. 2, Docket Entry No. 1-2.) Plaintiff alleges that at some unspecified time prior to his arrest, the victim and the victim's friend told Detective Mongan that "the person who committed the crime had black hair and eyeglasses that had a solid black frame" and that they "had been with [the perpetrator] . . . for thirty minutes." (Compl. 8.) When Detective Mongan arrived at Plaintiff's home, Plaintiff alleges that Detective Mongan "could plainly see that" he had "light brown hair" and "was wearing eyeglasses which had a gray frame with clear

---

489, 491 (2d Cir. 2007)). In addition, in light of Plaintiff's *pro se* status, the Court also considers and assumes the truth of the factual allegations in Plaintiff's opposition to the motion, in addition to Plaintiff's other Court filings. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (finding that district courts may consider factual allegations made by a *pro se* party in his papers opposing a motion to dismiss); *see also Trisvan v. Heyman*, 305 F. Supp. 3d 381, 389 (E.D.N.Y. 2018) (same); *Waters v. Douglas*, No. 12-CV-1910, 2012 WL 5834919, at *2 (S.D.N.Y. Nov. 14, 2012) ("[I]n light of the plaintiff's *pro se* status, the [c]ourt has considered all of plaintiff's submissions, drawing every reasonable inference in his favor.").

[4] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 25; Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), annexed to Defs.' Mot. as Ex. 3, Docket Entry No. 25-3; Pl.'s Mem. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n"), annexed to Defs.' Mot. as Ex. 9, Docket Entry No. 25-9.

spots [throughout] the frame." (*Id.*) Notwithstanding these inconsistencies with the witnesses' description of the suspect, Detective Mongan "started accusing" Plaintiff "of [sexual abuse] and eventually arrested [him] . . . while knowing full well that [he] did not have the right hair color of the person who committed the crime." (*Id.*)

Plaintiff contends that after he was arrested, "Detective Mongan changed the date of the crime twice because [Plaintiff established] an alibi" for each date and that as a result, Plaintiff was wrongly convicted of the underlying crime.[5] (Compl. 8–9.) In addition, Plaintiff alleges that Detective Mongan falsely testified that the victim identified Plaintiff because he had seen him "working at the Villa Restaurant of Center Moriches [(the 'Villa Restaurant')] two months before the time of the crime." (*Id.* at 9.) However, Plaintiff contends that Detective Mongan committed perjury because Plaintiff had stopped working at the Villa Restaurant "five months before the time of the crime,"[6] and "the victim later gave sworn statements that he never saw [Plaintiff] working at [the] restaurant at any time and he never told anyone that he saw [Plaintiff] working [there]." (*Id.*) Plaintiff alleges that the payroll records from the Villa Restaurant reflect that his employment ended on April 15, 1967, but that the District Attorney improperly withheld these records from evidence. (Suffolk County District Ct. Mot. ¶ 14.) Further, Plaintiff alleges that despite the fact that Detective Mongan "testified in [Suffolk County] District Court that [Plaintiff had] made no oral or written admissions and confessions," he later submitted "a letter

---

[5] Plaintiff claims that he was "ten miles away in a dentist's office" on August 31, 1967, the date the victim initially indicated that the incident had occurred. (Letter dated Jan. 10, 2020; *see also* Suffolk County District Ct. Mot. ¶ 10, annexed to Compl. as Ex. 3, Docket Entry No. 1-3.)

[6] Plaintiff also contends that the owner of the Villa Restaurant, James Spara, falsely testified that Plaintiff "worked at the Villa Restaurant for three months during the early summer of 1967 . . . when he knew full well [that Plaintiff] worked there from January 1 of 1967 to April 15 of 1967." (Suffolk County District Ct. Mot. ¶ 14.)

3

to the District Attorney claiming [Plaintiff] made statements to him that made [Plaintiff] look like [he] had major sexual problems." (Compl. 9.) Plaintiff contends that he did not become aware of this letter until twenty-five years later, despite the fact that Plaintiff's attorneys "requested all the records in the case from the police department" and that the "letter was used to indict [him] of [the] crime."[7] (Letter dated Jan. 10, 2020; *see also* Suffolk County District Ct. Mot. ¶ 11.)

After trial, on June 12, 1968, the jury convicted Plaintiff of "endangering the life or health of a child and carnal abuse of a child." *People v. Lavrick*, 536 N.Y.S.2d 548, 548 (1989) (denying "[a]ppeal by the defendant, by permission, from an order of the County Court, Suffolk County . . . [denying] his motion . . . to vacate a judgment of the same court . . . rendered October 18, 1968, convicting him of endangering the life or health of a child and carnal abuse of a child, upon a jury verdict, and imposing sentence"); (*see also* Letter from the Hon. Thomas M. Stark 61, annexed to Compl. as Ex. 4, Docket Entry No. 1-4.)

### b. Presentence Investigation Report

Plaintiff alleges that after the trial, Probation Officer William Wurtz falsified the Presentence Investigation Report (the "PSR") and that the state appellate court subsequently relied on these false statements regarding Plaintiff's sexual life and his home life to affirm Plaintiff's conviction, preventing Plaintiff from being able to "clear [his] name on appeal." (Compl. 9–10; *see also* Suffolk County District Ct. Mot. ¶ 17.) Plaintiff contends that in violation of his right to due process, he remained unaware of these false statements in the PSR for almost twenty-five years as he "ha[d] no legal right to even read [the PSR]" at the time of his

---

[7] Plaintiff alleges that he did not receive a copy of the District Attorney's letters until "the early nineties." (*Id.* ¶ 12.)

4

trial and that he only became aware that Probation Officer Wurtz had falsified his PSR "when the [a]ppellate [c]ourt used false statements in [Plaintiff's PSR] to uphold [his] conviction." (Compl. 10.)

## II. Discussion

### a. Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations in the complaint as true[] and drawing all reasonable inferences in the plaintiff's favor." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)); *see also Tsirelman v. Daines*, 794 F.3d 310, 313 (2d Cir. 2015). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). Although all allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)); *see also Wiley v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (holding that courts must

liberally construe papers submitted by *pro se* litigants "to make the strongest arguments they suggest"); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

### b. Plaintiff fails to state a claim against Suffolk County

Defendants move to dismiss Plaintiff's claim brought under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against Suffolk County, arguing that "the Complaint reveals no viable claim against [Suffolk County]" because there is no underlying constitutional violation or facts alleged supporting liability based on existing "customs and/or policies [that] caused the subject constitutional violation." (Defs.' Mem. 5–6.)

Plaintiff does not address Defendants' arguments regarding the viability of his claim against Suffolk County but alleges generally that Suffolk County "destroyed [his] life," (Compl. 8), and "the Lavrick family," (Pl.'s Opp'n 2).

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 258 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he suffered the denial of a constitutional right that was caused by an official municipal policy or custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by

policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d at 62 (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *O'Kane v. Plainedge Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (failing to "take appropriate action to prevent or sanction violations of constitutional rights" amounting to deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012))); *Jones*, 691 F.3d at 81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

Plaintiff fails to allege any facts to support an inference that Suffolk County had an official policy or custom that caused a violation of any federally protected right. Accordingly, Plaintiff's section 1983 claim against Suffolk County is dismissed.

### c. False arrest, malicious prosecution, due process, and *Brady* claims

Defendants argue that the Court should dismiss Plaintiff's claims for false arrest, malicious prosecution, deprivation of due process, and violation of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), because: (1) Defendants had probable cause to arrest Plaintiff; (2) there was no favorable termination in the underlying criminal case; (3) Plaintiff's claims are barred by the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994), because they imply the invalidity of his conviction; and (4) the statute of limitations has expired. (Defs.' Mem. 2–5.)

### i. False arrest claims

Defendants argue that Plaintiff's conviction is conclusive evidence of probable cause to arrest him and that the statute of limitations on his false arrest claims has "long run." (*Id.* at 3.)

Plaintiff contends that Defendants did not have probable cause for his arrest because the suspect was known to have "black hair and eyeglasses that had a solid black frame," and Plaintiff had "light brown hair and . . . was wearing eyeglass[es] which had a gray frame with clear spots [throughout] the frame." (Compl. 8.) In addition, Plaintiff argues that the suspect was described as wearing "a flower pattern shirt," but Plaintiff has never owned such a shirt and when Detective Mongan "looked into [his] closet . . . there were no flowered pattern shirts in it." (Suffolk County District Ct. Mot. ¶¶ 4, 11.) Plaintiff does not address his conviction.

In assessing Fourth Amendment claims of false arrest brought under section 1983, courts generally look to the law of the state in which the arrest is alleged to have occurred. *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007); *see also Dalessio v. City of Bristol*, 763 F. App'x 126, 128 (2d Cir. 2019). "Under New York law, the elements of a false arrest . . . claim are: '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016) (per curiam)). "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also Spagnuolo v. Howell*, 814 F. App'x 614, 616–17 (2d Cir. 2020) ("Probable cause is a complete defense to a constitutional or New York tort claim for false

arrest and false imprisonment . . . ."); *Walsh v. City of New York*, 742 F. App'x 557, 561 (2d Cir. 2018) ("Probable cause 'is a complete defense to an action for false arrest' brought under . . . [section] 1983." (quoting *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (per curiam))); *Thompson v. City of New York*, 592 F. App'x 36, 37 (2d Cir. 2015) (noting that probable cause is a complete defense to a false arrest claim, whether it is asserted under New York state law or section 1983); *Killburn v. Village of Saranac Lake*, 413 F. App'x 362, 362 (2d Cir. 2011) (noting same and adding that this also "holds true for . . . false imprisonment claims because, under New York law, the claim is identical to a false arrest claim, and the federal claim looks to the elements of the state claim (citation omitted)).

"Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Spagnuolo*, 814 F. App'x at 617 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)); *Simpson*, 793 F.3d at 265 (same). A conviction of the plaintiff following the arrest "necessarily establishes probable cause" sufficient to preclude a false arrest claim. *See Corsini v. Brodsky*, 731 F. App'x 15, 18 (2d Cir. 2018) (citing *Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986)); *Lockett v. City of Middletown*, No. 19-CV-8255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) ("[The plaintiff's] undisturbed conviction precludes any claim for false arrest or malicious prosecution as a matter of law." (first citing *Corsini*, 731 F. App'x at 18; and then citing *Washington-Steele v. City of New York*, No. 18-CV-7431, 2020 WL 4017938, at *3 (S.D.N.Y. July 16, 2020))); *Smith v. Rossini*, No. 19-CV-323, 2020 WL 9816016, at *4 (E.D.N.Y. Nov. 30, 2020) ("A conviction of the plaintiff following the arrest 'necessarily

establishes probable cause' sufficient to preclude a false arrest claim." (quoting *Corsini*, 731 F. App'x at 18)).

Plaintiff was convicted on June 12, 1968, following a jury trial. (*See* Letter from Judge Thomas M. Stark 61); *see also Lavrick*, 536 N.Y.S.2d at 548. Plaintiff does not claim that his conviction was overturned or otherwise vacated.

Accordingly, in light of Plaintiff's conviction, officers had probable cause to arrest Plaintiff and Plaintiff's conviction forecloses his false arrest claims under both section 1983 and New York law. *See Poole v. Hawkins*, No. 18-CV-443, 2021 WL 695119, at *8 (E.D.N.Y. Feb. 23, 2021) ("'[A] conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause' sufficient to preclude a false arrest claim." (quoting *Cameron*, 806 F.2d at 387)); *see also Smith*, 2020 WL 9816016, at *5 (dismissing the plaintiff's false arrest claims brought pursuant to section 1983 and New York law because the plaintiff's conviction established probable cause for his arrest). The Court therefore grants Defendants' motion and dismisses these false arrest claims.

  ii. **Malicious prosecution claims**

Defendants argue that Plaintiff's malicious prosecution claims should be dismissed because they had probable cause to arrest Plaintiff and, because of his conviction, Plaintiff is unable to prove favorable termination. (Defs.' Mem. 3.)

Plaintiff does not address these arguments but contends that he was maliciously prosecuted because evidence was fabricated, including Detective Mongan "[changing] the date of the crime twice because [Plaintiff] had an alibi," "[writing] a letter to the District Attorney claiming [Plaintiff] made statements to him that made [Plaintiff] look like [he] had major sexual problems," and testifying that the victim saw Plaintiff "working at the [Villa Restaurant] two

months before the time of the crime." (Compl. 5–6, 8–9; *see also* Suffolk County District Ct. Mot. ¶¶ 10, 12, 14; Pl.'s Opp'n 1.) In addition, Plaintiff argues that "[Probation] Officer Wurtz placed many false statements in the [PSR]," and that "Suffolk County had James Spara who has a criminal record and who is the owner of the Villa Restaurant commit perjury concerning [Plaintiff's] date of employment." (Compl. 10; *see also* Suffolk County District Ct. Mot. ¶¶ 4, 6–7, 14, 17–19.)

The Second Circuit has clarified that "federal law defines the elements of a [section] 1983 malicious prosecution claim, and that a [s]tate's tort law serves only as a source of persuasive authority rather than binding precedent in defining these elements." *Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018). To prevail on a section 1983 claim for malicious prosecution, a plaintiff is "required to show 'a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment,'" *id.* at 24 (alteration in original) (quoting *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004)), and "that criminal proceedings were initiated or continued against him, with malice and without probable cause, and were terminated in his favor," *id.* (first citing *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016); and then citing *Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013)). The elements of malicious prosecution under New York law are substantially the same. *See Morris v. Silvestre*, 604 F. App'x 22, 24 (2d Cir. 2015) ("The elements of a claim for malicious prosecution in New York are '(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [the] defendant's actions.'" (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010))). However, under section 1983, a plaintiff is required to show

11

an "affirmative indication[] of innocence to establish 'favorable termination,'" *see Lanning*, 908 F.3d at 25, and under state law, the favorable termination element is satisfied "so long as the final termination of the criminal proceeding is not inconsistent with the [p]laintiff's innocence," *id.* (citing *Penree v. City of Utica*, No. 13-CV-1323, 2016 WL 915252, at *17 (N.D.N.Y. Mar. 4, 2016)). Because the lack of probable cause is an element of a malicious prosecution claim, "the existence of probable cause is . . . a complete defense to a claim of malicious prosecution." *Keith v. City of New York*, 641 F. App'x 63, 67 (2d Cir. 2016) (first quoting *Stansbury v. Wertman*, 721 F.3d 84, 90 (2d Cir. 2013); and then citing *De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 761 (2016)).

As with Plaintiff's false arrest claim, probable cause is a complete defense to his malicious prosecution claim. *See Boyler v. City of Lackawanna*, 765 F. App'x 493, 496 (2d Cir. 2019) ("Probable cause is a complete defense to . . . malicious prosecution claims under both [section] 1983 and New York law." (citations omitted)); *Corsini*, 731 F. App'x at 18 (noting that a plaintiff's conviction "necessarily establishes probable cause for both the arrest and the ensuing prosecution"). Moreover, Plaintiff does not argue that his conviction was overturned or otherwise vacated and therefore fails to satisfy the favorable termination element. *Washington-Steele*, 2020 WL 4017938, at *3 ("[A] necessary component of a malicious prosecution action is the termination of the criminal proceeding in favor of the plaintiff." (first citing *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995); and then citing *Rivera v. City of Yonkers*, 470 F. Supp. 402, 408 (S.D.N.Y. 2000))). Because, as discussed above, Plaintiff's conviction establishes probable cause and failure to demonstrate a favorable termination, Plaintiff cannot establish a malicious prosecution claim under either section 1983 or New York law. The Court therefore grants Defendants' motion and dismisses his malicious prosecution claims.

### iii. Due process violation claim

Defendants generally allege that the statute of limitations has expired on Plaintiff's due process claim and argue in the alternative that this claim is barred by *Heck*. (Defs.' Mem. 2–3.)

Plaintiff does not address these arguments but contends that following his conviction, Probation Officer Wurtz made false statements in his pre-sentence report that were subsequently used to uphold Plaintiff's conviction "every time [he] filed an appeal over the years,"[8] but that "[Plaintiff] did not find out there were false statements in the [PSR] for almost twenty[-]five years" because he "ha[d] no legal right to even read [the PSR]" under New York law at the time of trial, (*see* Compl. 9–10; Suffolk County District Ct. Mot. ¶¶ 5–7), and that he only discovered the false statements when "the [a]ppellate [c]ourt used false statements in that report to uphold [his] conviction" in January of 1989.[9] (Compl. 9–10); *Lavrick*, 536 N.Y.S. 2d at 548.

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process of law, and 'those who seek to invoke its procedural protection must establish that one of these interests is at stake.'" *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (quoting *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012)). However, an individual convicted of a crime may not bring a section 1983 suit that "necessarily impl[ies] the invalidity of his conviction or sentence . . . unless [he] can demonstrate that the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (discussing that plaintiffs may seek

---

[8] Plaintiff appealed an order of the County Court, Suffolk County, dated June 9, 1986, denying his motion pursuant to New York Criminal Procedure Law ("N.Y. Crim. Proc. L.") § 440.10 to vacate a judgment of the same court. *See Lavrick*, 536 N.Y.S. 2d at 548.

[9] *See id.* (finding that Plaintiff "acknowledged during a presentence interview with a probation officer that 'he occasionally gets "unusual desires" and this is what happened in the instant offense.' He blamed these desires and abnormalities on his alcoholic mother").

13

damages for "'wrong procedures, [but] not for reaching the wrong result,' [so long as that] procedural defect did not 'necessarily imply the invalidity of' the revocation" (quoting *Heck*, 512 U.S. at 482–83, 487)); *Shapard v. Attea*, 710 F. App'x 15, 17 (2d Cir. 2017) (quoting *Heck*, 512 U.S. at 487); *Warren v. Fischl*, 674 F. App'x 71, 73 (2d Cir. 2017) (same).

The Court declines the address the sufficiency of Plaintiff's allegations to establish a due process violation because, even assuming the sufficiency of the Complaint, Plaintiff's claim is barred by *Heck*. *See Warren*, 674 F. App'x at 73 (finding plaintiff's claim that he was convicted based on fabricated evidence barred by *Heck*); *D'Amato v. Roberts*, 120 F. App'x 391, 392 (2d Cir. 2005) (affirming district court's dismissal of plaintiff's claim that "[the probation officer] provided false information in the PSR to the sentencing judge for the purpose of harming [the plaintiff] as to his sentence" because "such a claim is not cognizable under *Heck v. Humphrey*"); *cf. Marone v. Greene Cnty. Prob. Dep't*, No. 08-CV-658, 2008 WL 4693196, at *4 (N.D.N.Y. Sept. 26, 2008) ("Plaintiff's attack of the veracity of the information included in the PSR and his desire to have it amended reeks of what could amount to a challenge of the lawfulness of his sentence and therefore not cognizable under § 1983."), *report and recommendation adopted*, 2008 WL 4693196 (N.D.N.Y. Oct. 22, 2008).

Because Plaintiff's claim necessarily implies the invalidity of the state appellate court's decision to uphold his conviction, Plaintiff's due process violation claim is barred by *Heck* unless he proves "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487. Plaintiff does not argue that his conviction has been vacated or otherwise invalidated. The Court therefore grants Defendants' motion and dismisses Plaintiff's due process violation claim.

### iv. *Brady* violation claim

Defendants allege that the statute of limitations has expired on Plaintiff's *Brady* violation claim, (Defs.' Mem. 2–3), and that regardless, it is barred under the *Heck* doctrine, (*id.* at 5).

Plaintiff does not address these arguments but contends that the District Attorney suppressed exculpatory and impeaching evidence by failing to submit the Villa Restaurant payroll records into evidence, violating Plaintiff's rights under *Brady*. (Suffolk County District Ct. Mot. ¶ 14.) Plaintiff argues that these records could have been used to impeach Detective Mongan's testimony that the victim identified Plaintiff at the Villa Restaurant two months before the crime occurred. (*Id.* ¶ 15.) In addition, Plaintiff asserts that the payroll records could have been used to contradict the testimony of Villa Restaurant owner Spara, who also stated that Plaintiff was working at the Villa Restaurant until two months prior to the incident. (*Id.*)

As with Plaintiff's due process claim, Plaintiff's *Brady* claim is barred by *Heck* as a finding by this Court that Plaintiff's rights under *Brady* had been violated would implicate the validity of Plaintiff's underlying conviction. *See Johnson v. N.Y.C. Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (holding that the plaintiff's "*Brady* claim is not cognizable under [section] 1983 unless the challenged conviction has been invalidated" because "'*Brady*-based [section] 1983 claims necessarily imply the invalidity of a challenged conviction . . . ' because 'the remedy for a *Brady* violation is vacatur of the judgment of conviction and a new trial.'" (quoting *Poventud v. City of New York*, 750 F.3d 121, 132–33 (2d Cir. 2014) (en banc))); *see also Hurley v. Town of Southhampton*, No. 17-CV-5543, 2018 WL 3941944, at *15 (E.D.N.Y. Aug. 13, 2018) ("Plaintiff's *Brady* claim is barred by *Heck*[ as] Plaintiff has not alleged that his convictions in the Southampton Town Court . . . have been invalidated in any way." (first citing *McCollough v. Hale*, No. 15-CV-691, 2015 WL 7281643, at *3 (E.D.N.Y. Nov. 17, 2015); and

then citing *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999))). The Court therefore grants Defendants' motion and dismisses Plaintiff's *Brady* violation claim.

### d. Leave to amend

Defendants argue that Plaintiff should be denied leave to amend because the defects in the Complaint cannot be cured, therefore, any amendment to the Complaint would be futile. (Defs.' Mem. 7.)

Plaintiff does not address whether leave should be granted.

The Court finds that leave to amend would be futile because the problems with the Complaint are substantive and cannot be cured by amendment, and therefore denies leave to amend. As discussed above, Plaintiff's false arrest and malicious prosecution claims fail for probable cause and his malicious prosecution claims also fail because he cannot demonstrate favorable termination. In addition, Plaintiff's due process and *Brady* claims are barred by the *Heck* doctrine. Finally, although not decided in this Memorandum and Order, the Court notes that it appears that the statute of limitations on Plaintiff's claims has expired.[10] *See Edwards v.*

---

[10] Claims brought pursuant to 42 U.S.C. § 1983 in New York must be filed within three years of the date on which such claims accrue. *Milan v. Wertheimer*, 808 F.3d 961, 963–64 (2d Cir. 2015); *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994). A claim accrues when the plaintiff has "a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (quoting *Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 201 (1997)); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009) ("A [s]ection 1983 claim ordinarily 'accrues when the plaintiff knows or has reason to know of the harm.'" (quoting *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994))). The federal doctrine of equitable tolling permits a court, under compelling circumstances, to make narrow exceptions to the statute of limitations by postponing the accrual of a cause of action in order to prevent inequity. *See Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000). Under New York state law, the statute of limitations may be subject to equitable tolling in exceptional circumstances, which include where the accrual of the cause of action was concealed from the plaintiff, or when the defendant prevented the plaintiff from bringing a case. *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002) (describing equitable estoppel under New York law). Even giving Plaintiff the benefit of the

*Black*, --- F. App'x ---, ---, 2021 WL 1748478, at *3 (2d Cir. May 4, 2021) ("Generally, '[a] proposed amendment to a complaint is futile when it could not withstand a motion to dismiss . . . .'" (alteration in original) (quoting *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164–65 (2d Cir. 2015))); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224–25 (2d Cir. 2017) ("Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." (quoting *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012))); *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

---

doubt and assuming that, other than the false arrest and *Brady* claims, the claims were tolled until the mid-nineties when Plaintiff learned of the District Attorney's letter and the allegedly false information included in the state appellate court's decision, (*see* Compl. 9–10; Suffolk County District Ct. Mot. ¶¶ 5–7, 11–12), the statute of limitations on these claims would nevertheless have expired over twenty years ago. With regard to Plaintiff's false arrest and *Brady* claims, the statute of limitations expired nearly fifty years ago. *See Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 675 (2d Cir. 2009) (holding that the statute of limitations for a claim of false arrest accrues at the time of arraignment or when "the victim becomes held pursuant to legal process — when, for example, he is bound over by a magistrate or arraigned on charges"); *Valdiviezo v. Greer*, No. 14-CV-4897, 2018 WL 4863584, at *9 (E.D.N.Y. Oct. 4, 2018) (finding that the plaintiff's claim for "*Brady* violations, which plaintiff seeks to bring pursuant to 42 U.S.C. § 1983, ha[s] [a] statute[] of limitations of three years" (citing *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997))).

### III. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss and dismisses the Complaint. The Clerk of Court is respectfully directed to mail a copy of the decision to Plaintiff and to close this case.

Dated: July 8, 2021
      Brooklyn, New York

SO ORDERED:

   /s MKB          
MARGO K. BRODIE
United States District Judge